UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
|     EUGENE J. FISHER, SR. | ) | Case No. 08-15342-SSM |
| | ) | Chapter 7 |
|                   Debtor | ) | |
| | ) | |
| GREGORY V. FERNANDEZ | ) | |
| | ) | |
|                   Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 08-01504 |
| | ) | |
| EUGENE J. FISHER, SR. | ) | |
| | ) | |
|                   Defendant | ) | |

**MEMORANDUM OPINION**

Before the court is the plaintiff's motion for reconsideration of the final judgment dismissing the complaint in this action objecting to the defendant's discharge and seeking a determination that the plaintiff's claim for money paid under a contract for deed is non-dischargeable. A trial was held without a jury on July 20, 2009. At the conclusion of the plaintiff's evidence, the court granted the defendant's motion for judgment as a matter of law and dismissed the complaint.[1] A judgment reflecting that ruling was entered on July 22, 2009. On August 3, 2009, the plaintiff filed the present motion as well as a notice of appeal.[2] For the

---

[1] A transcript of the court's oral findings of fact and conclusions of law has been filed with the clerk. (Doc. #38).

[2] Because a notice of appeal filed after entry of a judgment, but before disposition of a timely
(continued...)

reasons stated, the motion for reconsideration, which the court treats as a motion for a new trial and to alter or amend the judgment, will be denied.

## Background and Findings of Fact

The essential facts were set forth in the court's oral findings at the conclusion of the plaintiff's evidence but will be repeated—and to the extent necessary, supplemented—in order to provide a context for the present motion.

The defendant, Eugene J. Fisher, Sr. ("the debtor") filed a voluntary petition in this court on September 4, 2008, for relief under Chapter 7 of the Bankruptcy Code. Among the assets listed on his schedules is a condominium unit located at 2200 N. Westmoreland Street, #409, Arlington, Virginia. The property is valued on his schedules at $490,200, subject to two deeds of trust totaling $481,000 in favor of Bank of America. On his schedule of executory contracts (Schedule G) the debtor listed a contract for the deed of the property, and stated without elaboration that the "tenant/purchaser," plaintiff Gregory Fernandez, was "in breach for non-payment."

The property in question was purchased by the debtor—who was substituted at the last minute for his son and daughter-in-law as the contract purchasers—on January 16, 2007. In his loan application, he represented that he intended to occupy the property as his residence. Additionally, the deed from the developer contained an unusual restriction against renting or reselling the property for a period of one year. Instead of moving into the property, however, the

---

[2](...continued)
post-trial motion, is "ineffective to appeal from the judgment" until the entry of an order disposing of the post-trial motion, the court has jurisdiction to rule on the present motion notwithstanding the notice of appeal. Fed.R.Bankr.P. 8002(b).

debtor immediately listed it for sale, with his son as the listing agent. On June 12, 2007, the debtor entered into a contract to sell the property to Mr. Fernandez for $520,000. The contract—which was recorded in the land records—required a $8,775 down payment at the time of closing, with the balance of the purchase price to be paid in monthly installments of interest only in the amount of $2,875.64 beginning July 1, 2007, and increasing to $2,982.15 per month in July 2008, with the entire unpaid balance payable in full on June 1, 2009. The payment obligation was represented by a "wrap-around" note and deed of trust executed by Mr. Fernandez, and the debtor agreed to pay the prior deeds of trust "for so long as Purchaser pays Seller the required payments under the Purchaser's Note." Under the contract, Mr. Fernandez was also responsible for paying all real estate taxes and condominium unit owner association fees. The debtor executed a general warranty deed to be held in escrow by the escrow agent and recorded once the full purchase price was paid. Mr. Fernandez, for his part, executed a deed of release which was also to be held in escrow and recorded if he defaulted.

   Mr. Fernandez paid the required $8,775 at settlement by check, which the debtor then endorsed over to his son, who deposited it into his own account.[3] Mr. Fernandez made payments to the debtor of $2,875.64 each month beginning July 7, 2007. Starting in February 2008, however, his payments were consistently made more than 10 days after the due date. In addition, Mr. Fernandez did not increase the payment amount to $2,982.15 in July 2008, as required by the contract and wrap-around note. On August 20, 2008, Mr. Fernandez made a payment of

---

[3] Although the record is not well-developed on this point, it appears that the debtor's son and daughter in law had made a $25,000 deposit when they signed the contract but were ultimately not able to qualify for a loan. The turn-over of the $8,775 received from the debtor was apparently intended to partially reimburse them for the deposit.

$2,875.64 to the debtor. The debtor did not, however, use the money to make the underlying August mortgage payments to Bank of America; instead he cashed the check and used the money to pay other bills. After Mr. Fernandez learned that the debtor had not made the August mortgage payments, he made no further contract payments to the debtor, nor has the debtor made any further payments on the underlying mortgages.

On September 23, 2008—approximately two weeks after the bankruptcy petition was filed—the debtor sent Mr. Fernandez an email requesting payment of the September "rent" in the amount of $2,982.15 plus a late charge of $149.11. The debtor subsequently mailed Mr. Fernandez two letters via certified mail, return receipt requested, on September 29, 2008. The first requested immediate payment of the unpaid September rent. The second included an invoice that requested payment for the September rent, accumulated late fees, the $8,775 deposit due at the time of possession,[4] unpaid condominium fees, and unpaid real estate taxes, for a total of $22,676.85. On October 7, 2008, the debtor sent the escrow agent, Howard Bermiel, a letter summarizing his complaints against Mr. Fernandez and requesting assistance in selling or renting the property to another tenant/purchaser. Mr. Birmiel responded by sending a letter to Mr. Fernandez on October 10, 2008, notifying him of the debtor's request to record the deed of release with respect to the contract. In response, Mr. Fernandez hand-delivered a letter to Mr. Birmiel on October 14, 2008, asserting payment of the condominium fees and the $8,775 down payment, and contesting Mr. Fisher's ability to proceed with eviction while involved in

---

[4] The debtor by this time had apparently forgotten that Mr. Fernandez had in fact paid the deposit and that he (the debtor) had endorsed the check over to his son.

bankruptcy proceedings. Upon reviewing Mr. Fernandez's response, Mr. Birmiel sent the debtor a letter dated October 15, 2008, declining to record the deed of release.

After the bankruptcy petition was filed, Bank of America was granted relief from the automatic stay with respect to the property on November 21, 2008 (Doc. #22). For reasons that are not clear, however, a foreclosure sale has not yet been held, and Mr. Fernandez has continued to reside in the property without paying rent, real estate taxes, or condominium fees.

On November 28, 2008, Mr. Fernandez filed a timely complaint commencing the present action. In addition to the circumstances related to the contract for deed, his evidence at trial established that the debtor failed to list on his schedules a checking account he had at Chevy Chase Bank that had a balance, on the filing date, of $184.20.[5] Although the debtor professed to have simply forgotten about the account, he accessed it by use of a debit card on September 10, 2008, six days after the petition was filed. At the conclusion of Mr. Fernandez's evidence, the court granted the debtor's motion under Rule 52(c) for judgment as a matter of law and dismissed the complaint, essentially on two grounds: first, Mr. Fernandez had not shown any fraud by the debtor in connection with the contract for deed; and second, even with respect to his claim for breach of contract, he had not demonstrated the existence of any damages. The present motion for reconsideration, which was filed on August 3, 2009, asserts Mr. Fernandez's status as a valid creditor and offers additional evidence that he says shows he paid $26,198.01 in excess of the fair rental value of the property during the period leading up to the bankruptcy filing.

---

[5] This was apparently the bank account into which Mr. Fernandez's payments were deposited and from which the mortgage payments to Bank of America were made.

Additionally, Mr. Fernandez asserts that confusion during the recording of the trial by the court reporter and during the oral ruling justifies reconsideration of the ruling.

Conclusions of Law and Discussion

I.

The court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. An objection to discharge and a determination of dischargeability are core proceedings in which a final judgment may be entered by a bankruptcy judge, subject of course to the right of appeal. 28 U.S.C. § 157(b)(2)(I), (J). Venue is proper in this district under 28 U.S.C. § 1409(a). The debtor has been properly served and has appeared generally.

II.

Although the complaint does not cite to specific provisions of the Bankruptcy Code, it can fairly be read as objecting to the debtor's discharge on the ground that the debtor made false statements on his schedules in violation of § 727(a)(4), Bankruptcy Code, and as seeking a determination that the debtor's liability to Mr. Fisher is excepted from discharge under § 523(a)(2), Bankruptcy Code, as a debt for money obtained by false representations, false pretenses, or actual fraud.[6] The court will address these issues in reverse order.

---

[6] The complaint also asserted that the debtor was not entitled to a discharge because he had not completed the instructional course concerning personal financial management required by § 727(a)(11), Bankruptcy Code. Subsequent to the filing of the complaint, however, the debtor filed the required certificate of completion on November 28, 2008.

A.

A chapter 7 discharge discharges an individual from most types of liabilities that arose (or are deemed to have arisen) before the filing of the bankruptcy petition.  § 727(b), Bankruptcy Code.  There are, however, certain exceptions.  § 523(a), Bankruptcy Code.  Relevant to the present action, a chapter 7 discharge does not discharge a debtor from a debt:

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

§ 523(a)(2)(A), Bankruptcy Code.  To prove actual fraud under Section 523(a)(2)(A), an objecting creditor must establish five elements:  "(1) false representation, (2) knowledge that the representation was false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of damages."  *Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215 (4th Cir. 2007).  The burden of proof is on the objecting creditor, and the standard of proof is preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Although the evidence clearly shows that Mr. Fernandez paid $49,340.84 to the debtor in connection with the contract for deed, there is no evidence showing that the Mr. Fernandez was induced to enter into the agreement by a false statement, false representation, or actual fraud.  Mr. Fernandez surmises—based on the sequence of events leading up to the acquisition of title—that the debtor, when he purchased the property, may have been a mere nominee for his son, and thus may not have had authority to enter into the contract.  There is no dispute, however, that the debtor is the record owner of the property.  Mr. Fernandez's theory that the debtor is merely a straw for his son is little more than speculation and certainly does not rise to

7

the level of a preponderance of the evidence.  But even if the debtor were acting for his son in taking title and entering into the contract for deed, such conduct would not in any sense detract from the enforceability of the contract or lessen the value of the rights Mr. Fernandez obtained under the contract.  First, under Virginia law, a bona fide purchaser of real property may rely on the land records and is not subject to latent equities in favor of third parties.  *See, e.g., Snyder v. Grandstaff*, 96 Va. 473, 31 S.E. 647 (1898) (bona fide purchaser not affected by a latent equity of reformation grounded on mutual mistake); *Ransome v. Watson*, 145 Va. 669, 134 S.E. 707 (1926) (resulting trust not good against a bona fide purchaser); *Pair v. Rook*, 195 Va. 196, 77 S.E.2d 395 (1953) (constructive trust).  And second, even putting aside a purchaser's right to rely on the land records, an agent (if that is all the debtor is) would have at least apparent authority sufficient to bind his principal to a contract of sale when the principal allowed the agent to take title in his own name.  Notably, Mr. Fernandez has not presented a shred of evidence—such as a repudiation of the contract on the ground of incapacity or the refusal of a title insurance company to insure his title to the property—to show that he was induced to buy property from someone who did not actually have the right to convey it or that the debtor knew he had no such right.  Since the plaintiff has not carried his burden of proving a false representation that induced him to enter into the contract and make payments to the debtor, the claim for non-dischargeability under § 523(a)(2)(A) fails.

B.

An individual debtor may be denied a discharge altogether under certain circumstances.  Relevant to the present action, a debtor will be denied a discharge if "[t]he debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account[.]"

§ 727(a)(4)(A), Bankruptcy Code.  In a complaint objecting to the debtor's discharge, the burden of proof is on the objecting party, and the standard of proof is preponderance of the evidence. *Harmon v. McGee (In re McGee)*, 157 B.R. 966, 973 (Bankr. E.D. Va. 1993).  Once the creditor has established a prima facie case, however, the burden shifts to the debtor to provide satisfactory evidence to rebut the allegations.  *Farouki v. Emirates Bank Int'l. Ltd.*, 14 F.3d 244, 250 (4th Cir. 1994) ("While the burden of persuasion rests at all times on the creditor objecting to discharge, it is axiomatic that the debtor cannot prevail if he fails to offer credible evidence after the creditor makes a prima facie case.").

With respect to § 727(a)(4), courts have recognized that competing concerns are present. *Nat'l Post Office Mail Handlers, Watchmen, Messengers & Group Leaders Division v. Johnson (In re Johnson)*, 139 B.R. 163, 165 (Bankr. E.D. Va. 1992), *citing Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987).  On the one hand, bankruptcy is an equitable remedy, wherein "the statutory right to a discharge should ordinarily be construed liberally in favor of the debtor." *Nat'l Post Office Mail Handlers,* 139 B.R. at 166.  On the other hand, the very purpose of § 727 (a)(4)(A) is to ensure that "those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs," and that "complete, truthful, and reliable information is put forth at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction." *Id.*  These conflicting goals require careful and "evenhanded" consideration.  *Id.*

As the Fourth Circuit has explained, "In order to be denied a discharge under this section, the debtor must have made a statement under oath which he knew to be false, and he must have made the statement willfully, with the intent to defraud." *Williamson v. Fireman's Fund Ins. Co.*

*(In re Williamson)*, 828 F.2d 249, 251 (4th Cir. 1987). Further, "because a debtor is unlikely to testify directly that his intent was fraudulent, the courts may deduce fraudulent intent from all the facts and circumstances of a case." *Id.* at 252, *quoting In re Devers*, 759 F.2d 751, 753-4 (9th Cir. 1985). Finally, "the false oath made by the debtor must have related to a material matter." *Williamson*, 828 F.2d at 251. The subject matter of a false oath is "material," and thus sufficient to bar discharge, "if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Id.* at 252, *citing Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984).

Although Mr. Fernandez presented evidence—sufficient to survive a Rule 52(c) motion[7]—that the debtor omitted a bank account from his schedules, the debtor correctly notes that the only parties with standing to object to a debtor's discharge are the trustee, a creditor, or the United States Trustee. § 727(c)(1), Bankruptcy Code. Since Mr. Fernandez is neither the trustee nor the United States Trustee, the question is whether the evidence shows that he is a creditor. A "creditor" is defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." § 101(10), Bankruptcy Code. The term

---

[7] Rule 52(c), Federal Rules of Civil Procedure, which is incorporated by Rule 7052, Federal Rules of Bankruptcy Procedure, provides as follows:

> (c) JUDGMENT ON PARTIAL FINDINGS. If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

"claim" is very broadly defined and includes any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." § 101(5)(A), Bankruptcy Code. Mr. Fernandez has, in fact, filed a proof of claim in the debtor's case.[8] At the outset of this litigation, that was certainly sufficient to establish his status as a creditor and thus his standing to object to the debtor's discharge. But the issue now is whether, in light of the evidence presented at trial, he has actually established a right to payment. The court finds that he has not. For although the evidence makes out at least a prima facie case that the debtor—by not making payments on the underlying mortgages for August 2008 and subsequent months and allowing them to go into default—breached the contract for deed,[9] Mr. Fernandez has not offered *any* proof of damages.

---

[8] *See* Claim No. 10 filed on May 27, 2009, in the total amount of $49,340.84, of which $2,425.00 is claimed as a priority under § 507(a)(7), Bankruptcy Code, relating to consumer deposits.

[9] Because the challenge to standing was raised at the conclusion of the plaintiff's case and before the debtor offered any evidence, there is no occasion for the court to determine whether the plaintiff (as the debtor asserts) is himself guilty of a material breach in not making payments on time, making them in an insufficient amount for July and August 2008 (when the payment amount was to increase), and in not paying the real estate taxes and the condominium fees. The court does note that, at the time the debtor failed to make the August 2008 payments on the underlying mortgages, he had not yet given Mr. Fisher formal (or even informal) notice of default. The analysis of the debtor's failure to make the mortgage payments that became due after the filing date of the petition is complicated because the contract for deed became at that point an asset and obligation of the estate, which the trustee was empowered to assume or reject, depending on whether the benefit to the estate exceeded the burden of having to perform the debtor's obligations. § 365(a), Bankruptcy Code. In a chapter 7 case, if the trustee does not assume or reject an executory contract within 60 days of the petition, the contract is deemed rejected. *Id.* § 365(d)(1). Since the trustee did not assume the contract for deed within the 60-day period, it is deemed rejected. However, a purchaser who is in possession under an unperformed contract to purchase real property from the debtor has certain protections. *Id.* § 365(i). The purchaser may either treat the contract as terminated, or, in the alternative, may remain in possession. *Id.* § 365(i)(1). If the purchaser remains in possession, he must continue

(continued...)

Put another way, a naked breach of contract does not make one a creditor in the absence of damages from the breach. In particular, Mr. Fernandez—who not only lived in the property for the entire period he made payments but has continued to reside in the property for almost a year without making *any* payments—did not present evidence showing that the amounts he paid to the debtor exceeded the fair rental value of the property. Nor did he present evidence showing that the $520,000 he agreed to pay is below market and that he would have to pay more in today's market to purchase an equivalent unit. Put another way, while Mr. Fernandez may well be upset, he has shown neither an out-of-pocket loss (money paid for which no benefit was received) nor the loss of his bargain, in the sense that he will have to pay more for an equivalent unit than the amount he agreed to pay the debtor. In the absence of demonstrated damages, Mr. Fernandez has no right to payment from the debtor and is not a creditor. And since he does not qualify as a creditor, he lacks standing to object to the debtor's discharge. For that reason, the debtor is entitled to a dismissal of the objection to discharge.

### III.

The present motion for reconsideration—because it was filed within 10 days of the entry of the judgment[10]—is governed by Rule 9023, Federal Rules of Bankruptcy Procedure, which in turn incorporates Rules 59(a) and (e), Federal Rules of Civil Procedure. Rule 59(a) allows a

---

[9](...continued)
to make all payments due under the contract but may offset against such payments any damages occurring after the date of the rejection caused by the debtor's nonperformance. *Id.* § 365(i)(2)(A).

[10] The literal 10th day after entry of the judgment on July 22nd would have been August 1, 2009, which, however, was a Saturday. Thus, the time to file post-trial motions under Rule 9023 was extended to Monday, August 3, 2009. Fed.R.Bankr.P. 9006(a).

court to grant a new trial "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." The most common grounds that case law has recognized for granting such relief are "that the verdict is against the clear weight of the evidence, that damages are excessive, that the trial was not fair, or that substantial errors occurred in the admission or rejection of evidence or the giving or refusal of instructions." 12 Moore's Fed. Practice, § 59.13[1] (3rd ed.). Rule 59(e) allows the court—even without the grant of a new trial—to alter or amend a judgment. Although the rule itself does not specify the grounds that will justify such relief, the Fourth Circuit has explained that the moving party must make a showing that relief is proper (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993).

The motion for reconsideration does not take issue with the court's ruling on the issue of dischargeability, but only with respect to Mr. Fernandez's standing as a creditor to object to the granting of a discharge. Even so, the motion fails to meet any of the requirements outlined by the Fourth Circuit as supporting a motion to alter or amend. No intervening change in controlling law is identified. Although Mr. Fernandez makes an offer of proof to support his contention that the payments he made to the debtor under the contract for deed exceeded the fair rental value of the property,[11] this evidence was available, yet not submitted, at trial and

---

[11] Specifically, Mr. Fernandez attaches to his motion a spreadsheet showing total payments (including closing costs) made by him of $56,043.01 through August 2008, contrasted with what he asserts is the fair market rental value of the unit of $29,845.00 for the same period. He derives the fair rental value from what appears to be a real estate broker's multiple listing service print-out showing 2-bedroom units in the same building with monthly rentals ranging from $1,995 to $2,300, for an average of $2131.79. Also attached are photocopies of the checks for
(continued...)

therefore does not qualify as "new evidence." It is true that Mr. Fernandez is proceeding pro se; but even making appropriate allowance for his lack of trial experience, the efficient administration of justice would not be served by allowing what would amount to incremental trials, in which a party puts on only a tentative or partial case, with the presentation of further evidence to await the court's ruling on the evidence presented so far. Although Mr. Fernandez asserts that a showing of damages is not required for him to be considered a creditor, he does not support this assertion with citations to applicable statutes or case law. The law review article he attaches to his motion addresses a very different issue, specifically whether a creditor proceeding on a dischargeability claim under § 523(a)(2) is entitled to have the entire debt determined to be non-dischargeable if the debtor committed no fraud at the time the debt was incurred but made a false representation at a later time when the creditor might have protected its interest by calling the loan. In the present case, neither the evidence at trial nor the offer of proof made in the motion for reconsideration establish fraud. It is true that even in the absence of fraud—that is, even if the debt would otherwise be dischargeable—a creditor with a valid claim may object to the granting of a discharge if the debtor has, among other conduct, made a false oath or account in connection with the bankruptcy. However, nothing in the cited law review article remotely suggests that a creditor who has not actually suffered damages would have standing to object to a debtor's discharge.[12] Accordingly, Mr. Fernandez fails to present any case, let alone a

---

[11](...continued)
the payments made, a transcript of the court's ruling on the Rule 52(c) motion, and a copy of a law review article, Theresa J. Pulley Radwan, *No Harm, No Foul: Calculation of Nondischargeable Damages in Transactions Tainted by Fraud*, 58 SMU L.Rev. 1385 (2005).

[12] Indeed, quite the contrary. Although the focus of the article is on dischargeability rather than
(continued...)

compelling case, for the court to conclude that a clear error of law or manifest injustice has occurred.

## Conclusion

In summary, Mr. Fernandez did not carry his burden at trial of showing either a false representation that induced him to enter into the contract for deed or his own status as a creditor having an actual claim for damages from the debtor's breach of the contract. Additionally, he has not satisfied the requirements for granting a new trial or altering the judgment. For that reason, the motion for reconsideration will be denied. A separate order will be entered consistent with this opinion.

Date: _____  _____
                                    Stephen S. Mitchell
Alexandria, Virginia                United States Bankruptcy Judge

---

[12](...continued)
discharge, the author makes the cogent point, "Creditors actually harmed by fraud should be protected by nondischargeability. Conversely, those creditors not actually harmed by the fraud should not enjoy the benefits of nondischargeability just by happenstance of being a fraud 'victim.'" Radwan, *op. cit.* at 1418.

Copies to:

Gregory V. Fernandez
2200 N. Westmoreland St., Unit 409
Arlington, VA 22213
Plaintiff *pro se*

Earl J. Oberbauer, Jr., Esquire
9329 Battle St.
Manassas, VA 20110
Counsel for the defendant

Richard A. Bartl, Esquire
Tyler, Bartl, Ramsdell & Counts, P.L.C.
700 South Washington Street, Suite 216
Alexandria, VA 22314
Chapter 7 trustee